# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL Z. CASTRO,<br><br>  Plaintiff,<br><br>  v.<br><br>C. WADDLE,<br><br>  Defendant. | Case No. 1:20-cv-01454-NONE-EPG-PC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING FIRST AMENDED COMPLAINT BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER<br><br>OBJECTIONS, IF ANY, DUE WITHIN 21 DAYS |

**I.     INTRODUCTION**

Daniel Z. Castro ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the complaint commencing this action on October 6, 2020. (ECF No. 1). The complaint was on the Eastern District of California form and checked the boxes for "Access to the court," "Retaliation," and "Threat to safety" but did not include any supporting facts. (Id.). On January 4, 2021, the Court entered an order finding that the complaint failed to state any cognizable claims because it did not comply with Federal Rule of Civil Procedure 8. (ECF No. 16). The Court permitted Plaintiff to either file an amended complaint or to notify the Court that he wants to stand on his complaint. (Id.). On January 27, 2021, Plaintiff filed a motion requesting an extension of time to file his amended complaint, which the Court granted. (ECF Nos. 18, 19).

1    On April 9, 2021, Plaintiff filed his first amended complaint ("FAC"). (ECF No. 21). The
2 FAC brings claims against Defendants C. Waddle and Frost for violation of Plaintiff's Eighth
3 Amendment and Fourteenth Amendment rights arising out of Plaintiff being labeled as a snitch.
4 (Id.). On April 27, 2021, the Court screened the FAC and found that it failed to state any
5 cognizable claims. (ECF No. 23). The Court ordered that within thirty days from the date of
6 service of the screening order, Plaintiff must either file a second amended complaint or notify the
7 Court in writing that he wishes to stand on the FAC, and that failure to comply with the order
8 may result in the dismissal of the action. (Id. at 9–10).[1]

9    The thirty-day period has expired, and Plaintiff has not filed a second amended complaint
10 or otherwise responded to the Court's order. Accordingly, for the reasons described below, the
11 undersigned will recommend that Plaintiff's case be dismissed for failure to state a claim. The
12 undersigned will also recommend that Plaintiff's case be dismissed for failure to prosecute and
13 failure to comply with a court order.

14    **II.    SCREENING REQUIREMENT**

15    The Court is required to screen complaints brought by prisoners seeking relief against a
16 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The
17 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are
18 legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or
19 that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.
20 § 1915A(b)(1), (2).

21    The Court may also screen a complaint brought *in forma pauperis* under 28 U.S.C.
22 § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
23 court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is
24 frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks
25 monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
26 ///
27 ///

---

28 [1] Page numbers refer to the ECF page numbers stamped at the top of the page.

2

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, Hosp. Bldg. Co. v. Trs. of Rex Hospital, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF FIRST AMENDED COMPLAINT

On May 31, 2017, Correctional Lieutenant C. Waddle intentionally placed Plaintiff's life in danger and marked Plaintiff for murder/death by the S.T.G. prison gang 25 when C. Waddle authored and signed a rules violation report calling Plaintiff a confidential informant. C. Waddle told Plaintiff that if he did not work as an informant for her and provide information about any Islamic prisoners who were planning to attack staff, she would label Plaintiff a jailhouse snitch. Plaintiff refused, and C. Waddle punished Plaintiff by labeling him a snitch. C. Waddle has a history of working with prison gang 25 and is a dirty cop. C. Waddle knew Plaintiff's life was in danger but refused to place Plaintiff in protective custody or to take any action to protect him. Plaintiff informed clinician Frost that his life was in danger from prison gang STG 25. The institutional security unit was aware of C. Waddle's actions and prison officials had a duty to protect Plaintiff. Plaintiff was compelled to harm himself in order to avoid more serious danger due to being labeled a snitch by C. Waddle. The fact that Plaintiff displayed bizarre, unusual, or

uncharacteristic behavior at the time of the rules violation report should have been a red flag. Plaintiff acted to preserve the safety of correctional employees once and they returned his concern for human life by endangering his life.

## IV. DISCUSSION

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). See also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict'

constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676–77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### B. Labeling Plaintiff a Snitch

The FAC claims a violation of Plaintiff's Eighth Amendment rights arising out of C. Waddle labeling Plaintiff a snitch.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. Id. at 834.

"'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

The Ninth Circuit has held that telling inmates that someone is a "snitch" with the intent of having an inmate killed by other inmates could state a claim for a violation of the inmate's right to be protected from violence while in custody. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). In Valandingham, the plaintiff alleged that two prison officials had conspired to label him a snitch with the intent of having him killed. Id. The plaintiff also alleged that on a specific date, "he was approached by fellow prisoners and threatened with harm because [the defendant prison officials] had told other inmates in the law library that [plaintiff] was a snitch." The Ninth Circuit has also denied an Eighth Amendment claim when Plaintiff did not allege he was actually subjected to retaliation by fellow inmates, nor that Defendants were aware that their statements exposed the Plaintiff to substantial risk of serious harm. Morgan v. MacDonald, 41 F.3d 1291, 1293-94 (9th Cir. 1994).

The Court does not find a claim against Defendants C. Waddle or Frost for deliberate indifference. Plaintiff does not allege C. Waddle called Plaintiff a snitch in front of other inmates or that inmates threatened him or harmed him as a result of this. Although Plaintiff at times says that C. Waddle "labeled" him a snitch, Plaintiff alleges that she only did so in the rules violation report and does not allege that other inmates were made aware that C. Waddle had "labeled"

6

1 Plaintiff a snitch. Additionally, Plaintiff alleges that he harmed himself but does not allege that
2 any other inmates threatened or harmed Plaintiff as a result of C. Waddle calling Plaintiff a
3 snitch in the rules violation report.[2] Plaintiff also only alleges that he told Frost that his life was
4 in danger and does not allege that Frost was informed that Plaintiff had been labeled a snitch or
5 that Frost responded or failed to respond to this information. Plaintiff therefore has not alleged
6 facts indicating whether Frost knew of and disregarded an excessive risk to Plaintiff's safety.

### C.  False Rules Violation Report

8 The FAC also alleges a claim for violation of Plaintiff's Fourteenth Amendment rights.
9 Although unclear, it appears that this claim may relate to Plaintiff's allegation that C. Waddle
10 authored a false rules violation report.

11 The filing of a false rules violation report by a prison official against a prisoner is not a
12 per se violation of the prisoner's constitutional rights. See Muhammad v. Rubia, 2010 WL
13 1260425, at *3 (N.D. Cal. Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A]
14 prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of
15 conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner
16 is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge
17 fail to state a claim under § 1983." (internal citation omitted.)); Harper v. Costa, No. CIV S-07-
18 2149 LKK DAD P, 2009 WL 1684599, at *2–3 (E.D. Cal. June 16, 2009), aff'd, 393 Fed. Appx.
19 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a
20 published opinion, district courts throughout California . . . have determined that a prisoner's
21 allegation that prison officials issued a false disciplinary charge against him fails to state a
22 cognizable claim for relief under § 1983.").

23 There are, however, two ways that allegations that an inmate has been subjected to
24 a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges

---

[2] Although not dispositive, the Court notes that Plaintiff filed a motion for preliminary injunction concurrently with his First Amended Complaint and attached C. Waddle's rule violation report as an exhibit to that motion. (ECF No. 21). According to the rules violation report, Plaintiff was threatening to kill "members of the STG's" and when asked why he wanted to kill them stated "I'm going to get them before they get me. They know I told on someone and now they are after me." (Id. at 7). Plaintiff also attaches a declaration from inmate Jorge Fajardo declaring that Plaintiff has been placed on a kill list by SGT 25 gang members as a result of allegations of him being an informant due to a rules violation report from 2012 and not due to the contents of C. Waddle's rules violation report. (Id. at 13).

7

that the false disciplinary report was filed in retaliation for her exercise of a constitutional right and (2) when the prisoner alleges that she was not afforded procedural due process in a proceeding concerning the false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140–41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections[.]"); see also Ellis v. Foulk, No. 2:14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirement'[.]" (quoting Hanrahan, 747 F.2d at 1140)).

Plaintiff does not allege that C. Waddle filed a false report against him in retaliation for his exercise of a constitutional right. Instead, Plaintiff alleges that C. Waddle authored a false rules violation report because Plaintiff refused to provide information regarding Islamic inmates who planned to attack staff. See Whitely v. Lebeck, No. 2:17-cv-2107 AC, 2020 WL 1952666, at *5 (E.D. Cal. Apr. 23, 2020) ("The First Amendment protects an inmate's right to litigate and file grievances. It does not extend to verbal interactions with correctional staff." (citations omitted)). Plaintiff also does not allege that he was not afforded procedural due process in a proceeding on the false report. Thus, under the legal standard described above, Plaintiff fails to state a claim arising out of the allegedly false rules violation report.

### D. Failure to Prosecute and Follow Court order

"In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." Pagtalunan v. Galaza, 291 F.3d 639,

642 (9th Cir. 2002) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1260–61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" Pagtalunan, 291 at 642 (quoting Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999)). Accordingly, this factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants . . . ." Pagtalunan, 291 at 642 (citation omitted). Plaintiff has failed to file a second amended complaint or notify the Court that he intends to stand on the FAC. This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." Pagtalunan, 291 at 642 (citing Yourish, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," id. at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Thus, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, at this stage in the proceedings there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's incarceration and *in forma pauperis* status, monetary sanctions are of little use. And, given the stage of these proceedings, the preclusion of evidence or witnesses is not available.

Finally, because public policy favors disposition on the merits, this factor weighs against dismissal. Pagtalunan, 291 at 643.

After weighing the factors, the Court finds that dismissal with prejudice is appropriate.

**V.     RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that this action be dismissed with prejudice for failure to state a claim, failure to prosecute, and failure to comply with a court order.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **TWENTY-ONE (21) days** after service of the Findings and Recommendation, Plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 17, 2021**         /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE